IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **DIRECTV,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 5:04-0211 |
| | ) | |
| **MITCHELL BURGESS,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On March 8, 2004, Plaintiff, DIRECTV, Inc. [DIRECTV], by counsel, filed its Complaint against Defendant, Mitchell Burgess, essentially alleging that Mr. Burgess unlawfully intercepted its satellite transmissions by purchasing pirate access devices which he later sold. (Document No. 1.) By Orders filed on March 10, 2004, and January 13, 2005, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document Nos. 3 and 16.) Pending before the Court is DIRECTV's Motion for Summary Judgment, filed on December 7, 2004. (Document No. 13.) For the reasons discussed below, the undersigned recommends that DIRECTV's Motion be denied.

**PROCEDURE AND FACT**

DIRECTV, incorporated under the laws of California, distributes satellite television to approximately eleven million homes and businesses in the United States. (Document No. 1, ¶ 2.) DIRECTV offers its satellite television to individuals and businesses on a subscription and pay-per-view basis only. (Document No. 13, p. 3, ¶ 4.) To receive the satellite programming, customers must possess a small satellite dish, an integrated receiver/decoder [IRD], and an access card to operate

the IRD.[1] (Document No. 1, ¶ 12.) To prevent the unauthorized reception of its satellite signal, DIRECTV electronically encrypts, or scrambles, its signal. (Id. ¶¶ 17-19.) Based upon the programming package purchased, the access card, containing an embedded microprocessor and using smart card technology, decrypts, or unscrambles the signal and allows the customer to view those channels to which he has subscribed or otherwise purchased. (Id.) The signal is received through the satellite dish where it is then transmitted by wire to the IRD. (Id.) The IRD processes the signal through the use of the access card, which is a small credit card-sized device loaded onto the IRD. (Id.) The access card records the customer's subscription package and pay-per-view purchases. (Id.) DIRECTV periodically transmits streams of data that disable unauthorized access cards. (Id.) Notwithstanding DIRECTV's efforts to block unauthorized access, manufacturers and distributors of pirate access devices have provided individuals and businesses with illegal devices to circumvent the encryption technology and other security measures. (Document No. 13, p. 4, ¶ 8.)

In the instant action, the undisputed evidence reveals that the Defendant, Mr. Burgess, purchased from Montgomery Ward, a DIRECTV receiver system around December, 2000. (Id., Exhibit A, Interrogatory No. 10; Exhibit B, Deposition, pp. 11-14.) From April 30, 2001, through September 4, 2001, Mr. Burgess admits that he purchased from Mountain Electronics, an Arizona distribution center for pirate access devices, *via* the Internet, 22 "bootloaders" from April, 2001, through September, 2001. (Id., Interrogatory Nos. 10 and 12; Deposition, pp. 36-37; Exhibit C, Admissions.) The bootloaders are devices which were primarily designed and intended to assist in

---

[1] At all relevant times, NDS manufactured and supplied DIRECTV Access Cards that were programmed and serialized by NDS; DIRECTV does not manufacture any equipment. (Document No. 1, ¶¶ 13-14.) Rather, DIRECTV sells programming purchased through various entity providers. (*Id*. ¶ 16.)

the unauthorized decryption and reception of DIRECTV's satellite television programming. (Document No. 13, ¶ 13.) Mr. Burgess purchased the 22 bootloaders with the intent to resell them for profit on Ebay. (Id., Interrogatory Nos. 9 and 12; Deposition, pp. 35-36, 49.)

On March 8, 2004, DIRECTV initiated this civil action against Mitchell Burgess. (Document No. 1.) DIRECTV alleges that Mr. Burgess purchased approximately 25 pirate access devices from Mountain Electronics, an Internet retailer, and resold them in interstate commerce. (Id. ¶ 26(a).) Specifically, DIRECTV alleges that Mr. Burgess is civilly liable for possessing these pirate access devices in violation of The Communications Act, 47 U.S.C. §§ 605(a) and (e)(4) (Counts One and Two); The Digital Millenium Copyright Act, 17 U.S.C. § 1201(a)(2) and (b)(1) (Count Three and Four); the federal wiretap laws, 18 U.S.C. § 2511(1)(a) and § 2512(1)(b) (Counts Five and Six). (Id., ¶¶ 29-58.) In Counts Seven through Ten, DIRECTV further sets forth claims of unjust enrichment, tortious interference with contractual relations, tortious interference with prospective contractual relations, and statutory and common law unfair competition. (Id. ¶¶ 59-73.)

Mr. Burgess, acting *pro se*,[2] filed his Answer to DIRECTV's Complaint on April 28, 2004, denying all "allegations from DIRECTV that [he] unlawfully manufactured, distributed, and/or sold devices intended to facilitate the illegal and unauthorized reception and decryption of DIRECTV's subscription and pay-per-view television programming." (Document No. 5.)

On December 7, 2004, DIRECTV filed its Consolidated Motion for Summary Judgment and Memorandum in Support Thereof, seeking judgment against Mr. Burgess on Counts One, Two, and

---

[2] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Five of the Complaint, based in part, upon his admitted purchases of 22 bootloaders.[3] (Document No. 13.) Attached to DIRECTV's Motion and Memorandum, are the following Exhibits: (A) Mr. Burgess' responses to Interrogatories; (B) Mr. Burgess' Responses to DIRECTV's Requests for Admissions; (C) The transcript of Mr. Burgess' deposition, conducted on January 7, 2004; (D) DIRECTV's First Set of Requests for Production of Documents to Mr. Burgess; (E) An Affidavit of Leah Macia, counsel for DIRECTV; and (F) Civil Minutes entered in DIRECTV v. Trone, Civil Action No. 02-05194 (C.D. Cal. Feb. 12, 2003), reflecting the unlawful nature of bootloaders. (Document No. 13, Exhibits A-F.) By Order entered January 13, 2005, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Mr. Burgess, advising him of his right to file a response to DIRECTV'S Motion for Summary Judgment. (Document No. 17.) On January 18, 2005, the undersigned conducted a status conference to advise Mr. Burgess of his obligations and the Court's expectations of him should he continue to proceed *pro se*. (Document No. 19.) Mr. Burgess, acting *pro se*, filed his Response to DIRECTV's Motion on March 11, 2005, in which he admits that he purchased 22 bootloaders from Mountain Electronics, intending to resell them on Ebay. (Document No. 21.) Mr. Burgess specifically denies that he intended to use the devices for himself. (Id.) After receiving the devices however, Mr. Burgess states:

> I became aware of them being illegal and that Direct TV was trying to prosecute people for buying and selling them. I have not sold any of the 22 devices, they are still in my possession. In cooperation with Direct TV I am willing to allow them to inspect the devices and would be willing to turn them over to Direct TV. I am asking that Direct TV reconsider the allegations against me and in conclusion, drop all charges.

---

[3] DIRECTV notes that the remaining statutory and common law claims against Mr. Burgess "are not the subject of this motion, and [ ] will be withdrawn by DIRECTV if the Court grants this Motion." (Document No. 13, p. 2 n. 1.)

(Id.)

## APPLICABLE STANDARD

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

I.    **DIRECTV'S Statutory Claims.**

     A.    **Count One - Violation of the Federal Communications Act, 47 U.S.C. § 605(a).**

In Count One, DIRECTV alleges that Mr. Burgess intercepted its satellite signals without authorization, in violation of 47 U.S.C. § 605(a). Section 605(a) provides, in pertinent part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

18 U.S.C. § 605(a).[4] Any person aggrieved by a violation of § 605(a) has a cause of action in federal court. 47 U.S.C. § 605(e)(3)(A).

To prevail on its claim under § 605(a), DIRECTV must establish that Mr. Burgess received or intercepted DIRECTV satellite transmissions. See DIRECTV v. Vanderhoek, 302 F.Supp.2d 814, 817 (W.D. Mich. 2004). DIRECTV contends that based upon Mr. Burgess' purchase and possession of DIRECTV equipment and 22 bootloaders, together with his deposition testimony and email, DIRECTV is entitled to a presumption that Mr. Burgess used the devices to pirate DIRECTV's signal. (Document No. 13, p. 13.) Although circumstantial evidence may be used, even in the absence of direct evidence, to demonstrate that a signal was intercepted, the federal courts have reached differing results as to what amount of circumstantial evidence is sufficient to allow an inference of actual interception. Several federal courts have found however, that circumstantial evidence must be used to establish interception, and not mere capability of interception. In

---

[4] Although § 605(a) specifically refers to "radio," this section has been held to apply to radio and satellite transmissions, but not coaxial cable transmissions. *See e.g., International Calbevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993).

DIRECTV v. Robson, __ F.3d __, 2005 WL 1870775, *3 (5th Cir. (La.) Aug. 9, 2005), the Fifth Circuit affirmed summary judgment for the defendant where the evidence of interception was "confined largely to demonstrating the purchase and possession of the devices at issue, rather than the use of those devices to intercept DTV's transmissions." The Court stated that "some additional evidence beyond mere possession is necessary for the plaintiff to survive summary judgment on an interception claim." Id.

In VanderHoek, the Western Michigan District Court held:

> [I]t is not enough for a plaintiff merely to show that a defendant possessed equipment capable of intercepting a communication in order to show that the defendant actually received or intercepted the plaintiff's communication. Rather, the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception.

VanderHoek, 302 F.Supp.2d at 820. DIRECTV contended that its evidence, consisting of VanderHoek's admissions that he possessed the equipment necessary to receive the signal and that his purchase of the Chip, is enough to demonstrate that he intended to use the Chip to decrypt and receive its signal. Id. DIRECTV also provided an expert statement indicating that the Chip was designed for use in a separate device to alter DIRECTV's access cards. Furthermore, VanderHoek cancelled his DIRECTV services after one month. Id. The District Court found that DIRECTV's evidence was sufficient to create a genuine issue of material fact. Id.

In DIRECTV v. Minor, __ F.3d __, 2005 WL 1870779 (5th Cir. (Tex.) Aug. 9, 2005), the Fifth Circuit held that evidence of possession of a satellite dish on a rooftop of a non-DIRECTV subscriber, together with the purchase of an unlooper, used to alter access cards, takes the evidence "sufficiently beyond purchase and possession of the unlooper; that is, the admitted purchase of the unlooper in conjunction with the DTV dish on the home of this technically savvy non-subscriber

creates a triable fact issue on the key element of interception."

Conversely, the Connecticut District Court determined that the use of descrambling devices may be presumed from the purchase of the device in the absence of non-use or other evidence. See Community Television Systems, Inc. v. Caruso, 134 F.Supp.2d 455, 460 (D.Conn. 2000); DIRECTV v. Gemmell, 317 F.Supp.2d 686, 693 (W.D. La. 2004)(Finding that "computer records that show the purchase and installation of equipment designed to unlawfully intercept electronic communications will suffice to create a rebuttable presumption of a violation of Section 605.")(*citing* Community Television Sys. v. Caruso, 284 F.3d 430, 436 (2d Cir. 2002). Similarly, in DIRECTV v. McCool, 339 F.Supp.2d 1025 (M.D. Tenn. 2004), the District Court found that circumstantial evidence created a rebuttable presumption that the pirate access device was used to intercept DIRECTV's signal. In McCool, the District Court found:

> Plaintiff has provided evidence, albeit circumstantial, from which a reasonable jury could determine the Defendant purchased the device and used it to intercept DIRECTV's satellite signal. The jury might conclude that it is highly unlikely that Defendant would permit someone he had met only months earlier at a bar to use his credit card to make on-line purchases. It is undisputed that Defendant possessed DIRECTV satellite equipment at all times relevant to this action. It is also undisputed that shortly after the purchase of the unlooper using Defendant's credit card, Defendant downgraded his DIRECTV programming package from the preumium Showscriber package to basic programming. Defendant has had computer training and worked as a computer assisted drafter for two years. Thus, the jury could conclude that Defendant had the opportunity, knowledge, and equipment necessary to illegally intercept DIRECTV's satellite signal.

After reviewing the evidence of record, the undersigned finds that DIRECTV is not entitled to a presumption that Mr. Burgess used the bootloaders to intercept its satellite signal, based upon the fact that he at one time purchased and possessed a satellite system and his statement that the purchased bootloaders would not work on his system. Mr. Burgess concedes that he purchased a satellite system in December 2000, or January 2001, but states that he discontinued his subscription

after three months and later sold the system, because he was able to receive a cable modem for his computer and cable television, with local channels, at a cheaper price. Mr. Burgess further concedes that he purchased 22 bootloaders from Mountain Electronics and that he intended to sell them for a profit online at Ebay. However, his deposition testimony, answers to interrogatories, and responses to requests for admissions, indicate his consistent statements that he did not personally use the devices unlawfully to intercept satellite programming from DIRECTV, and that he neither sold, nor otherwise disposed of, any of the 22 purchased devices. Although he admits that he initially intended to purchase 100 devices for re-sell, after he discovered their illegal nature, he ceased purchasing the devices and did not pursue his original plan to sell the devices. Mr. Burgess stated in his Answer, Response to DIRECTV's Motion for Summary Judgment, and during a status conference conducted by the undersigned, that he has in his possession all 22 devices and is willing to surrender them to DIRECTV.[5]

In their Motion, DIRECTV contends that Mr. Burgess' defense that "he possessed but did not use, the bootloaders is undermined by his own testimony and his admitted emails." (Document No. 13, p. 11.) Specifically, DIRECTV references an email sent by Mr. Burgess to Mountain Electronics in which he stated that he "was pleased" with their products and found them to be the "best boot loaders . . . on the net." (Id.) Mr. Burgess however, explained in his deposition that his statements of praise were directed toward the price of the devices, as opposed to their quality. (Document No. 13, Exhibit C, pp. 37-39.) Furthermore, DIRECTV contends that in his deposition,

---

[5] Although DIRECTV asserts in their Motion for Summary Judgment that Mr. Burgess' failure to surrender the devices requires a finding that he does not possess them. Based upon Mr. Burgess' consistent and sworn statements that he possesses all of the purchased devices, the undersigned is constrained to make such an inference.

Mr. Burgess acknowledged his attempt to use the bootloaders, as follows:

> Q. Was it this - - was the boot loader that you saw on that web site, was that the only device that Mountain Electronics was selling that would allow you to get free DirecTV?
> A. Yeah. That's all I seen on it.
> Q. You didn't see any different kinds of devices?
> A. Well, they had a bunch of stuff, but I didn't know what they was for. I didn't even know what the boot loader was for, you know. It said just put it in your box and watch TV, but don't know. I know it wouldn't work with mine.

(Document No. 13, Exhibit C, pp. 30-31.) Mr. Burgess' statement that the device would not work with his satellite system however, clearly rebukes DIRECTV's claim that it can be presumed from his purchase of the bootloaders and possession of a satellite system that he intercepted its signal in violation of 47 U.S.C. § 605(a). Under § 605(a), it is neither unlawful to possess or purchase pirate access devices, nor to *attempt* to intercept satellite transmissions; the statute requires *actual interception*. See Robson, __ F.3d at __, 2005 WL 1870775 * 4. Based on Mr. Burgess' deposition statements and other discovery responses, the undersigned finds that DIRECTV has established only that Mr. Burgess possessed a satellite system and that he cancelled his subscription with DIRECTV after only three months of service. The undersigned does not find that DIRECTV has established any evidence that Mr. Burgess actually used the purchased pirate access devices to intercept DIRECTV's transmission. Based on the foregoing, the undersigned finds that a genuine issue of material fact remains as to whether Mr. Burgess used any or all of the 22 purchased bootloaders to intercept DIRECTV's satellite transmission and therefore, DIRECTV's Motion for Summary Judgment with respect to § 605(a), must be denied.

    **B.**    **Count Five - Violation of the Electronic Communication Privacy Act, 18 U.S.C. §§ 2511, 2520.**

In Count Five, DIRECTV further alleges that Mr. Burgess intercepted its satellite signals in

10

violation of the Electronic Communication Privacy Act, 18 U.S.C. §§ 2511 and 2520. (Document No. 13, pp. 13-14.) Section 2511(1)(a) imposes criminal liability on anyone who

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

28 U.S.C. § 2511(1)(a). In Directv v. Nicholas, 403 F.3d 223 (4th Cir. 2005), the Fourth Circuit held that a civil action may be brought under the Federal Wiretap Act, 18 U.S.C. §§ 2510, et seq., against an individual alleged to have unlawfully *intercepted* its encrypted signals under 18 U.S.C. §§ 2511(1)(a) and 2520(a). Section 2520(a) states:

> (a) In general. - - Except as provided in section 2511(2)(a)(ii),[6] any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

28 U.S.C. § 2520(a). To prevail in a civil action under § 2511(1)(a) therefore, DIRECTV must again prove that Mr. Burgess intercepted its satellite signal. See Nicholas, 403 F.3d at 227; see also, Robson, __ F.3d at __, 2005 WL 1870775 at *3. Accordingly, for the same reasons discussed above with reference to interception under 47 U.S.C. § 605(a), the undersigned finds that DIRECTV's evidence creates a genuine issue of material fact with regard to alleged interception under 28 U.S.C. § 2511(1)(a).

### C. Count Two - Violation of the Federal Communications Act, 47 U.S.C. § 605(e)(4).

---

[6] Section 2511(2)(a)(ii) provides in pertinent part:

No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, or agents, landlord, custodian, or other specified person for providing information, facilities, or assistance in accordance with the terms of a court order, statutory authorization, or certification under this chapter.

Finally, DIRECTV contends that Mr. Burgess unlawfully sold the 22 bootloaders he purchased from Mountain Electronics in violation of 47 U.S.C. § 605(e)(4). Section 605(e)(4) provides:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronical, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

DIRECTV contends that because Mr. Burgess "has conceded that the bootloaders he purchased were primarily of assistance in illegally intercepting DIRECTV's broadcasts," and in the absence of his producing the 22 devices, "the only reasonable conclusion is that defendant distributed the devices to others." (Document No. 13, p. 16.) The undersigned finds that there is no evidence of record that Mr. Burgess sold the bootloaders he purchased from Mountain Electronics beyond DIRECTV's broad inference. Although Mr. Burgess admits that he intended to sell the bootloaders, DIRECTV has not produced any evidence in connection with Mr. Burgess' Ebay account that he advertised or posted the bootloaders for sale on Ebay's website or any information identifying the purchasers of the bootloaders. Furthermore, DIRECTV has not produced any receipts or deposits demonstrating that Mr. Burgess received any type of payment from the alleged sale of the bootloaders or deposited monies in his bank account which would reflect his selling the bootloaders. In view of the foregoing, the undersigned finds that DIRECTV is not entitled to a presumption that because Mr. Burgess has not produced to DIRECTV the 22 bootloaders, that he sold them. Plaintiff has consistently maintained that he has all 22 of the bootloaders in his possession. Accordingly, the undersigned

finds that a genuine issue of material fact remains as to whether Mr. Burgess sold any or all of the 22 bootloaders and therefore, DIRECTV's Motion must be denied.

## PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **DENY** Defendants' Motion for Summary Judgment. (Document No. 13.)

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby FILED, and a copy will be submitted to the Honorable United States District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and

to mail a copy of the same to counsel of record and to Defendant, *pro se*.

    ENTER: August 30, 2005.

                                        R. Clarke VanDervort
                                        United States Magistrate Judge